Argued and submitted February 8, reversed and remanded May 25, 1983

# STATE OF OREGON,
*Respondent,*
*v.*
# CHARLES LOCKNER,
*Appellant.*

## (81-256C; CA A25294)

663 P2d 792

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals from his convictions for assault and burglary. He contends that the trial court erred (1) in denying his pretrial motion to exclude evidence that he was a member of a motorcycle club that advocated white supremacy and (2) in overruling his objection to evidence that he had threatened to kill his former wife and that she had filed criminal charges against him. We reverse and remand for a new trial.

Arthur Valenzuela testified that he was in his home when he heard two voices at the door shouting, "Open up." Defendant and a companion, Ward, then kicked in the door, entered the house and began beating him with their fists and a tire iron. During the attack, Valenzuela's brother-in-law, Nickerson, entered the house and also began beating him. The assaults were apparently provoked by Valenzuela's earlier assault on his wife, Nickerson's sister. Valenzuela sustained serious injuries but managed to escape.

Unaware of the assault on Valenzuela, four police officers had been dispatched to arrest him for assaulting his wife. They testified that as they approached the house, they saw members of the "Weisskraft" motorcycle club, including defendant, in the yard. One officer testified that he saw one of the men carrying a tire iron. Officer Lethlean found Valenzuela in the backyard. He arrested him on the wife's assault charge and took him to the hospital. Dr. Tuttle, who examined Valenzuela, stated that he had contusions, cuts and cracked ribs that were consistent with his being struck with a heavy metal object. Valenzuela remained hospitalized for six days.

Later, Nickerson, Ward and defendant went to the home of defendant's former wife, Sherrilyn Lockner. Valenzuela's wife was there when they arrived. She testified that defendant and Ward were laughing and talking about hitting Valenzuela and making him cry and that they said they "bent" a crowbar on him. They later said that they were just teasing about the crowbar. She also testified that she saw blood on defendant's pants. Sandra Mullica, a police telephone operator, testified that defendant telephoned her at the police station and said that he was calling about Valenzuela and that "[w]e have taken care of him." Defendant denied participating in the assault on Valenzuela.

At trial, defendant testified that he entered the Valenzuela house only to help Mrs. Valenzuela move. Once inside, he saw Nickerson hitting Valenzuela. He then left. He also testified that Nickerson, enraged over Valenzuela's beating of his sister, acted alone.

Defense counsel made a pretrial motion to exclude all evidence relating to "Weisskraft," except the fact that defendant was a member of a motorcycle club with that name, on the ground that the relevance of such evidence was outweighed by its prejudice. The state contended that the evidence was admissible to show defendant's motive for attacking Valenzuela. *See* OEC 404(3). The trial court denied the motion, explaining that, because it had not heard any of the case, it did not know whether the evidence was relevant and thus could not weigh relevancy against possible prejudice.

During the trial, Lethlean testified that Valenzuela told him that he had been beaten by "Weisskraft." When asked what "Weisskraft" meant, Lethlean explained that it was a motorcycle club and that it meant "white supremacy or white power." Defendant did not object to that testimony. Valenzuela testified without objection that defendant and Ward were members of a motorcycle club known as "Weisskraft," that "Weisskraft" had a motto which meant "white power" and that defendant had given him a card that bore a racial slogan. Later, defendant read that slogan from the card, and the card was received in evidence without objection.

We must determine initially whether defendant preserved an objection for appeal. Notwithstanding his failure to object at trial, defendant contends that he was not required to renew his objection at trial, because his pretrial motion is considered to be an objection at the time the evidence is offered. *See State v. Madison,* 290 Or 573, 580, 624 P2d 599 (1981).

In *Madison,* a defendant made a pretrial motion to exclude *any* proof that he had beaten a woman. The trial court denied the motion. On appeal, the Supreme Court first considered whether the denial of a pretrial motion preserved the claimed error for appeal and, if so, whether it was error to receive the evidence. After determining that the denial of a

pretrial motion is reviewable under ORS 138.040,[1] the Supreme Court held that the motion was properly denied, because the objection had been to the evidence as a whole and part of the evidence was admissible.

■ Here, however, in denying defendant's motion, the trial court did not rule that the evidence was admissible. Rather, it stated, in effect, that the motion was premature. That ruling did not determine finally the admissibility of the evidence at trial. Therefore, it was incumbent on defendant to object to the evidence at trial to allow the court an opportunity to rule on his objection at that time. Having failed to object at trial, he did not preserve the claimed error for appeal.

Defendant next contends that the trial court erred in admitting evidence that he had threatened to kill his former wife and that she had filed criminal charges against him. At trial, Sherrilyn Lockner testified as a defense witness that she had seen Nickerson prior to the assault on Valenzuela, that he was upset over Valenzuela's assault on Nickerson's sister and that Nickerson said he was "going to do something" to Valenzuela. She testified further that when Nickerson, Ward and defendant returned to her house after the assault, she observed nothing unusual about defendant but noticed that Nickerson was covered with blood. On cross-examination, the state attempted to elicit testimony from her that defendant had threatened to kill her and that she had filed criminal charges against him. Defense counsel objected.

The state, contending that the evidence was relevant to show the witness' bias, made an offer of proof. The court then ruled that evidence that defendant had beaten the witness and that she had filed several criminal charges against him would be excluded, but that evidence of defendant's recent telephone threat to her and her recent criminal charge against him would be received. Defendant argues that it was error to show bias by evidence of his "other crimes" and that his former wife's bias was adequately shown by testimony that he and she had separated on several occasions, that they were attempting a reconciliation at the time and that she loved him.

---

[1] ORS 138.040 provides in relevant part:

"* * * Upon an appeal, or cross-appeal, any decision of the court in an intermediate order or proceeding may be reviewed. * * *"

 Evidence which would not otherwise be relevant may be admissible to show bias or interest of a witness. *State v. Dowell,* 274 Or 547, 550, 547 P2d 619 (1976); *Shrock v. Goodell,* 270 Or 504, 510, 528 P2d 1048 (1974); *State v. Mellinger,* 52 Or App 21, 28, 627 P2d 897 (1981). The witness's bias was shown by her testimony that at the time of trial she and defendant were attempting a reconciliation. The effect of the challenged evidence was to show that defendant, having telephoned and threatened to kill his former wife, was capable of assaulting Valenzuela. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. OEC 404(3).[2] The evidence should not have been received.

It remains to consider whether the error was harmless beyond a reasonable doubt. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

 The evidence concerning defendant's participation in the crime was contradictory. The other witnesses to the assault, Nickerson and Ward, did not testify. The admission of evidence that defendant had threatened to kill his former wife and that she had initiated criminal charges against him could lead the jury reasonably to infer that defendant was assaultive. In the context of this case, that was an impermissible inference that went to the heart of the case. One question was whether defendant assaulted the victim. If the jury could improperly infer that he was assaultive by nature, it could tip the scales in a close case such as here. Under these circumstances, we cannot say that the error was harmless.

Reversed and remanded for new trial.

---

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."